RECORD NUMBER: 14-1651(L); 14-1680

# United States Court of Appeals

*for the*

# Fourth Circuit

**ROBERT C. CAHALY,**

*Appellee/Cross-Appellant,*

– v. –

**PAUL C. LAROSA, III, REGINALD I. LLOYD and
SOUTH CAROLINA LAW ENFORCEMENT DIVISION,**

*Appellants/Cross-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA AT GREENVILLE

# OPENING AND RESPONSE BRIEF OF
# APPELLEE/CROSS-APPELLANT

SAMUEL D. HARMS, III
HARMS LAW FIRM, PA
33 Market Point Drive
Greenville, SC 29607
(864) 277-0102
samuel@harmslawfirm.com

*Counsel for Appellee/Cross-Appellant*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-1651__          Caption: __Robert Cahaly v. Paul LaRosa, III__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Robert C. Cahaly__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
        (appellant/appellee/amicus)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:
         N/A

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
        If yes, identify all such owners:
         N/A

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

    N/A

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

    N/A

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

    N/A

Signature: s/ Samuel D. Harms                    Date:        07/02/14

Counsel for: Robert C. Cahaly

# CERTIFICATE OF SERVICE
*****************************

I certify that on        07/02/14        the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

N/A

s/ Samuel D. Harms                                      07/02/14
    (signature)                                          (date)

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ........................................................................iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ..................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................... 1

STATEMENT OF THE CASE....................................................................... 2

    Statement of the Case ........................................................................ 2

    Statement of Facts............................................................................. 3

SUMMARY OF ARGUMENT ................................................................... 16

ARGUMENT .............................................................................................. 18

    I. STANDARD OF REVIEW .......................................................... 18

        A. Standard of Review for Reviewing the District Court's
           Grant of Summary Judgment .................................................. 18

    II. DISCUSSION OF ISSUES......................................................... 19

        The Constitutionality of South Carolina's ADAD Code
        Sections................................................................................... 19

        ISSUE ONE: South Carolina's ADAD Code Sections are
        unconstitutional because they are a content based restriction
        on speech ................................................................................ 19

           1.  Facially Unconstitutional ............................................. 23

           2. Unconstitutional as Applied to the Plaintiff in this
             Case ................................................................................ 34

i

ISSUE TWO: The Code Sections are unconstitutional because they impermissibly compel political speech. ............. 36

ISSUE THREE: The Code Sections violate the Plaintiff's constitutional rights because the Code Sections are unconstitutionally vague ......................................................... 39

    1. Facially Unconstitutional ................................................ 44

    2.  Unconstitutional As Applied to the Plaintiff in this Case ............................................................................ 46

ISSUE FOUR: For the 42 U.S.C. § 1983 damages claim, there are genuine issues of material fact as to whether Defendants Lloyd and LaRosa arrested and prosecuted the Plaintiff to retaliate against him because of his political speech. ................................................................................... 49

    A. Summary Judgment ....................................................... 50

    B.  Retaliatory-Arrest............................................................ 50

    C.  Retaliatory-Prosecution................................................... 52

ISSUE FIVE: For the state law causes of action for false imprisonment and malicious prosecution, there are genuine issues of material fact as to whether there was probable cause to arrest the Plaintiff ........................................................ 52

CONCLUSION AND REQUEST FOR RELIEF......................................... 57

REQUEST FOR ORAL ARGUMENT ........................................................ 57

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Arlington County Repub. Comm. v. Arlington County Va.*,
    983 F.2d 587 (4th Cir.1993) ................................................................ 29

*Ashcroft v. ACLU*,
    542 U.S. 656, 124 S.Ct. 2783 (2004) ................................................ 26

*Boos v. Barry*,
    485 U.S. 312, 108 S.Ct. 1157 (1988) ................................................ 23

*Brown v. Town of Cary*,
    706 F.3d 294 (4th Cir. 2013) ....................................................... passim

*Buckley v. Valeo*,
    424 U.S. 1, 96 S.Ct. 612 (1979) ............................................ 21, 22, 23

*Burson v. Freeman*,
    504 U.S. 191, 112 S.Ct. 1846 (1992) ......................................... 19, 23

*Citizens United v. Federal Election Commission*,
    558 U.S. 310, 130 S.Ct. 876 (2010) ............................................ 21, 25

*City of Beaufort v. Baker*,
    315 S.C. 146, 432 S.E.2d 470 (1993) ................................................ 40

*City of Ladue v. Gilleo*,
    512 U.S. 43, 114 S.Ct. 2038 (1994) .................................................. 29

*Clark v. Alexander*,
    85 F.3d 146 (4th Cir. 1996) .............................................................. 50

*Crawford-El v. Britton*,
    523 U.S. 574, 118 S.Ct. 1584 (1998) ......................................... 50, 51

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749, 105 S.Ct. 2939 (1985) ................................................ 21

*Eu v. S.F. Cnty. Democratic Cent. Comm.*,
    489 U.S. 214, 109 S.Ct. 1013 (1989) .................................................. 21

*FCC v. League of Women Voters of Cal.*,
    468 U.S. 364, 104 S.Ct. 3106 (1984) .................................................. 24

*Grayned v. City of Rockford*,
    408 U.S. 104, 92 S.Ct. 2294, (1972) .................................................. 41

*Hartman v. Moore*,
    547 U.S. 250, 126 S.Ct. 1264 (2006) ........................................... 50, 52

*Hill v. Colorado*,
    530 U.S. 703, 120 S.Ct. 2480 (2000) .................................................. 40

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*,
    515 U.S. 557, 115 S.Ct. 2338 (1995) .................................................. 39

*Jennings v. Univ. of N.C.*,
    482 F.3d 686 (4th Cir. 2007) ............................................................. 18

*Kolender v. Lawson*,
    461 U.S. 352, 103 S.Ct. 1855 (1983) ........................................... 40, 41

*Lysaght v. State*,
    837 F.Supp. 646 (D.N.J.1993) ..................................................... 16, 27

*Marshall v. Meadows*,
    105 F.3d 904 (4th Cir. 1997) ............................................................. 43

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ........................................................................... 50

*McCullen v. Coakley*,
    ___ U.S. ___, 134 S.Ct. 2518 (2014) ........................................... 24, 30

*McIntyre v. Ohio Elections Comm'n*,
    514 U.S. 334, 115 S.Ct. 1511 (1995) ........................................... 19, 23

iv

*Mills v. Alabama,*
    384 U.S. 214,  86 S.Ct. 1434 (1966) .................................................. 22

*Moser v. Frohnmayer,*
    315 Or. 372, 845 P.2d 1284 (1993) ............................................. 16, 27

*Mt. Healthy City Bd. of Ed. v. Doyle,*
    429 U.S. 274, 97 S.Ct. 568 (1977) .................................................... 51

*Nat'l Fed'n of the Blind v. F.T.C.,*
    420 F.3d 331 (4th Cir. 2005) .............................................................. 28

*New York Times Co. v. Sullivan,*
    376 U.S. 254, 84 S.Ct. 710 (1964) .................................................... 22

*Occupy Columbia v. Haley,*
    738 F.3d 107 (4th Cir. 2013) .............................................................. 21

*Parker v. Levy,*
    417 U.S. 733 (1974)............................................................................ 42

*People v. Stuart,*
    100 N.Y.2d 412, 765 N.Y.S.2d 1, 797 N.E.2d 28 (2003) .................. 41

*Perry v. Sindermann,*
    408 U.S. 593, 92 S.Ct. 2694 (1972) .................................................. 51

*Reichle v. Howards,*
    ___ U.S. ___, 132 S.Ct. 2088 (2012) .......................................... 50, 52

*Rendell-Baker v. Kohn,*
    457 U.S. 830, 102 S.Ct. 2764 (1982) ................................................ 20

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.,*
    487 U.S. 781, 109 S.Ct. 2667 (1988) ................................................ 39

*Sable Commc'ns of Calif., Inc. v. F.C.C.,*
    492 U.S. 115, 109 S.Ct. 2829 (1989) ................................................ 26

*Smith v. Goguen*,
    415 U.S. 566, 94 S.Ct. 1242 (1974) .................................................... 41

*Snyder v. Phelps*,
    ___ U.S. ___, 131 S.Ct. 1207 (2011) .............................................. 21

*Suarez Corp. Indus. v. McGraw*,
    202 F.3d 676 (4th Cir.2000) .............................................................. 51

*Terminiello v. Chicago*,
    337 U.S. 1, 69 S.Ct. 894 (1949) ........................................................ 20

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) ........................................... 21, 50, 51, 52

*United States v. Harriss*,
    347 U.S. 612, 74 S.Ct. 808 ................................................................ 40

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803, 120 S.Ct. 1878 (2000) .......................................... 19, 23

*United States v. Stevens*,
    533 F.3d 218 (3rd Cir. 2008) ............................................................. 25

*United States v. Stevens*,
    559 U.S. 460, 130 S.Ct. 1577 (2010) .......................................... 25, 30

*Van Bergen v. State of Minnesota*,
    59 F.3d 1541 (8th Cir.1995) ................................................... 17, 27, 28

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489, 102 S.Ct. 1186 (1982) .............................................. 40

*Webster v. U.S. Dep't of Agric.*,
    685 F.3d 411 (4th Cir. 2012) ............................................................ 18

*Winters v. New York*,
    333 U.S. 507, 68 S.Ct. 665 (1948) .................................................... 22

*Wooley v. Maynard*,
    430 U.S. 705, 97 S.Ct. 1428 (1977) ................................................... 38

**Rules, Statutes and Other Authorities**

28 U.S.C. § 1291 ..................................................................................... 1

28 U.S.C. § 1331 ..................................................................................... 1

28 U.S.C. § 1367 ..................................................................................... 1

28 U.S.C § 2201 ...................................................................................... 1

28 U.S.C § 2202 ...................................................................................... 1

42 U.S.C. § 1983 ............................................................................. passim

Fed. R. Civ. P. 56 .................................................................................. 50

First Amendment to the U.S. Constitution ........................................... passim

Fourteenth Amendment to the U.S. Constitution ............................................ 2

S.C. Code § 16-17-445 ................................................................... 2, 6, 9

S.C. Code § 16-17-445(A)(3) .............................................................. 13, 42

S.C. Code § 16-17-445(B)(1) ............................................... 12, 14, 36, 38, 55

S.C. Code § 16-17-445(B)(2) ....................................................... 12, 37, 56

S.C. Code § 16-17-445(B)(3) ....................................................... 12, 37, 56

S.C. Code § 16-17-446 ...................................................................... passim

S.C. Code § 16-17-446(A) ..................................................................... 13

S.C. Code § 16-17-446(A)(B) ................................................................ 11

S.C. Code § 16-17-466 ..................................................................... 10, 11

S.C. Attn'y. Gen. Op. dated September 22, 2010, AGO 10-542........... passim

*Speech and Distrust: Rethinking the Content Approach to Protecting the Freedom of Expression*, 81 Notre Dame L.Rev. 1347 (2006)............... 26

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case is a challenge to the constitutionality of the "robocall" laws of the State of South Carolina by Robert C. Cahaly ("Cahaly"). The case was removed by the Defendants to the United States District Court for the District of South Carolina (the "District Court"), JA5, which had proper subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331, 28 U.S.C §§ 2201-2202, 28 U.S.C. § 1367, and 42 U.S.C. § 1983.

The District Court entered its final Opinion and Order in this case on June 10, 2014. JA249. On June 30, 2014, the Defendants-Appellants, Paul C. LaRosa, III ("LaRosa"), Reginald I. Lloyd ("Lloyd"), and the South Carolina Law Enforcement Division ("SLED") timely filed their notice of appeal. JA270. On July 8, 2014, the Plaintiff and Cross-Appellant, timely filed his notice of cross-appeal. JA272. The Opinion and Order was a "final decision[] of the district court," and therefore, this Court has proper appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

This appeal presents five discrete issues:

(1) Are South Carolina's ADAD Code Sections unconstitutional because they are a content based restriction on speech?

1

(2) Are the Code Sections unconstitutional because they impermissibly compel political speech?

(3) Do the Code Sections violate the Plaintiff's constitutional rights because the Code Sections are unconstitutionally vague?

(4) For the 42 U.S.C. § 1983 damages claim, are there genuine issues of material fact as to whether Defendants Lloyd and LaRosa arrested and prosecuted the Plaintiff to retaliate against him because of his political speech?

(5) For the state law causes of action for false imprisonment and malicious prosecution, are there genuine issues of material fact as to whether there was probable cause to arrest the Plaintiff?

## STATEMENT OF THE CASE

**Statement of the Case**

This case is a challenge to the constitutionality of South Carolina Code §§ 16-17-445 and 16-17-446 ("Code Sections"), which limit the right of Plaintiff Robert C. Cahaly to engage in constitutionally protected political speech. This is a civil action for declaratory and injunctive relief arising under the First and Fourteenth Amendments to the United States Constitution. In addition, the Plaintiff has brought a federal 42 U.S.C. § 1983 action, and state false imprisonment and malicious prosecution actions against the Defendants.

The complaint was filed on October 31, 2012, by Cahaly in state court. JA7. The Defendants timely removed the case to the District Court on March 22, 2013 and filed an answer on the same date. JA5, 29. On November 14, 2013, Cahaly filed Plaintiff's motion for a preliminary injunction, or in the alternative, for partial summary judgment. JA40. The Defendants filed a motion for summary judgment on December 6, 2013. JA88. The District Court did not hear oral arguments. The District Court issued its Opinion and Order in this case on June 10, 2014. JA249. The court granted the Plaintiff's motion for summary judgment as to the Plaintiff's challenges to the constitutionality of the Code Sections. Also, the court granted the Defendants' motion for summary judgment as to the Plaintiff's damages claim under 42 U.S.C. § 1983 and the state law causes of action for false imprisonment and malicious prosecution against the Defendants. Finally, the District Court denied the Defendants' motion for summary judgment regarding the Plaintiff's challenges to the constitutionality of the Code Sections.

**Statement of Facts**

Defendant Reginald I. Lloyd is a prominent political supporter of Representative Mia Garrick. JA75 ¶ 11. Rep. Mia Garrick is a member of the South Carolina House of Representatives and she is elected as a Democrat. *Id.*, JA84-85. Defendant Lloyd hosts fundraisers for Rep. Mia Garrick's reelection campaigns and he seeks donations in the amount of $1,000.00 on her behalf. JA75,

3

84-85. In addition, Defendant Lloyd appears in campaign advertisements for Rep. Garrick. JA75, 85. Also, Defendant Lloyd was the Director of the South Carolina Law Enforcement Division. JA74 ¶ 5. This made him the highest ranking state official with arrest powers in the State of South Carolina. On May 18, 2011, Defendant Lloyd had a fundraiser for Rep. Garrick. JA84. Defendant Lloyd, on the fundraising materials, used his title as "Chief of SLED" to raise money for Rep. Garrick. JA84. During the time period Lloyd was soliciting funds for the fundraiser, Lloyd arrested the Plaintiff. JA75 ¶ 11, 84. On the date of the fundraiser, and while he was appearing in campaign ads for Rep. Mia Garrick, Defendant Lloyd was actively prosecuting the Plaintiff in the criminal courts of the State of South Carolina. JA75 ¶ 11, 84-85. After the Plaintiff's arrest, and during the prosecution of the criminal case against the Plaintiff, Director Lloyd would travel to the courthouse and personally appear in Court on behalf of SLED. JA75 ¶ 11. On November 2, 2010, just two days before the general election involving Rep. Mia Garrick, Defendant Lloyd issued a press release accusing the Plaintiff of committing campaign crimes and he mentions the campaign of Rep. Garrick (House District 79) in the press release. JA78 ¶¶ 28-32, 87. The press release generated a tremendous amount of negative press and television coverage for the Plaintiff and his client, the Republican candidate challenging Rep. Garrick, in the

4

two days leading up to the general election. *Id*. In the final days of the campaign, Defendant Lloyd did his part to help Rep. Garrick's reelection campaign.

Defendant Paul C. LaRosa, III is a Special Agent with the South Carolina Law Enforcement Division. JA73 ¶ 4. He is supervised by Defendant Lloyd. He has the authority to issue warrants for the arrest of individuals, including the Plaintiff. *Id*. On November 1, 2010, Defendant LaRosa submitted to a magistrate court six arrest warrants for the arrest of the Plaintiff. JA76. The arrest warrants were issued two days before the general election in South Carolina and garnered a tremendous amount of news coverage. The arrest warrants contain many statements that are *legally* false (*see* full discussion *infra*). In short, Defendant LaRosa fabricated the elements of a crime by changing the wording of the Code Sections to deceive the magistrate court. JA76-78. In addition, LaRosa failed in the arrest warrants to disclose to the court that a prize promotion is an essential element of the crime. *Id*. It is undisputed that the telephone message in this case did not contain a prize promotion. *Id*. Defendant LaRosa's facially (legally) false arrest warrants resulted in the arrest of Plaintiff Cahaly. JA79.

The Plaintiff, Robert C. Cahaly, is a Republican political consultant who has engaged in political speech in the State of South Carolina and has conducted political campaigns. JA73 ¶ 2. The Plaintiff desires to engage in political speech and conduct political campaigns in the future in the State of South Carolina. JA73

5

¶ 3. The Plaintiff desires to conduct telephone survey polls in the future in the State of South Carolina of a political nature and telephone calls related to political campaigns. *Id.*

S.C. Code § 16-17-445, Regulation of Unsolicited Consumer Telephone Calls, states, in part:

> (A) As used in this section:
> (1) **"Consumer telephone call"** means a call made by a telephone solicitor for the purpose of soliciting a sale of any consumer goods or services to the person called, ….
>
> (3) **"Prize promotion"** means:
> (a) a sweepstakes or other game of chance; or
> (b) an oral or written representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.
>
> (4) **"Unsolicited consumer telephone call"** means a consumer telephone call other than a call made:
> (a) in response to an express request of the person called;
> (b) primarily in connection with an **existing debt or contract**, payment, or performance of which has not been completed at the time of the call; or
> (c) to a person with whom the telephone solicitor has an **existing business relationship** or had a **previous business relationship.**
>
> (B) A telephone solicitor who makes an unsolicited consumer telephone call must disclose promptly and in a

6

clear conspicuous manner to the person receiving the call, the following information:

> (1) the **identity of the seller**;
> (2) that the **purpose of the call is to sell goods or services**;
> (3) the **nature of the goods or services**;

(F) … In addition, a person who violates the provisions of this section is guilty of a misdemeanor and, upon conviction for a first or second offense, must be **fined not more than two hundred dollars or imprisoned for not more than thirty days**, and for a third or subsequent offense must be fined not less than two hundred dollars nor more than five hundred dollars or imprisoned for not more than thirty days. Each violation constitutes a separate offense for purposes of the civil and criminal penalties in this section.

Also, S.C. Code § 16-17-446, Regulation of Automatically Dialed Announcing Device (ADAD), states, in part:

> (A) **"Adad"** means an automatically dialed announcing device which delivers a recorded message without assistance by a live operator for the purpose of making an unsolicited consumer telephone call **as defined in Section 16-17-445(A)(3). [Prize Promotion]** Adad calls include automatically announced calls of a **political nature** including, but not limited to, **calls relating to political campaigns.**

> (B) Adad calls are **prohibited except**:
> > (1) in response to an express request of the person called;
> > (2) when primarily connected with an **existing debt or contract**, payment or performance of which has not been completed at the time of the call;
> > (3) in response to a person with whom the telephone solicitor has an **existing business**

7

> **relationship** or has had a **previous business relationship**.
>
> (C) Adad calls which are not prohibited under subsection (B):
>
>> (1) are **subject to Section 16-17-445(B)(1), (2), and (3)**[identity of the seller; purpose of the call is to sell goods or services; nature of the goods or services].
>
> (D) A person who violates this section, upon conviction, must be **punished** as provided in Section 16-17-445(F)[fined not more than two hundred dollars or imprisoned for not more than thirty days].

On or about September 16, 2010, the Plaintiff had conversations with attorneys at the South Carolina Attorney General's Office regarding the legality of automated telephone <u>survey polls</u> of a political nature and was orally informed by an attorney at the Attorney General's Office that they were legal. JA74 ¶ 7. However, the Plaintiff was encouraged by the attorney at the Attorney General's Office to get a formal, written opinion from the Attorney General's Office by having a member of the General Assembly request a formal opinion. *Id.*

On or about September 17, 2010, at Mr. Cahaly's request, South Carolina State Representative Thad Viers sought an opinion from the South Carolina Attorney General's Office regarding the legality of automated telephone <u>survey polls</u> of a political nature in the State of South Carolina. JA74 ¶ 8, 81 (Viers letter). On September 22, 2010, the Attorney General of the State of South Carolina issued an Attorney General's Opinion, S.C. Attn'y. Gen. Op. dated September 22, 2010,

AGO 10-542, (hereinafter AGO 10-542) (JA74 ¶ 9, 82 (Opinion)) which states in part:

> In the opinion of this office, organizations, such as Survey USA, may routinely conduct automated survey telephone calls for political purposes in this State that require the recipient's responses via a phone key. The purpose of the ADAD law is to prohibit the unwarranted invasion by automated dialing devices in order to **promote advocacy of a "product" including a particular candidate. Thus, as long as these polling calls, even if they are of a political nature, do not advocate a particular political candidate but simply obtain a "snapshot" opinion of a voter, they may be made.**

The Attorney General is the Chief Prosecutor in the State of South Carolina pursuant to the South Carolina State Constitution. Article V, Section 24 ("The Attorney General shall be the chief prosecuting officer of the State with authority to supervise the prosecution of all criminal cases in courts of record."). Pursuant to the Constitution of the State of South Carolina, AGO 10-542, is legally binding on Defendants LaRosa, Lloyd, and SLED since they are agents, officers and departments which prosecute criminal cases in the State of South Carolina. The South Carolina Attorney General is the final decision maker for the Defendants on matters of statutory construction and law, including the interpretation and enforcement of S.C. Code §§ 16-17-445 and 16-17-446.

Prior to November 1, 2010, Defendants were provided a copy of AGO 10-542 by attorneys and agents for the Plaintiff and, upon information and belief, the

9

Defendants read AGO 10-542. JA75 ¶ 10. The Defendants were provided a copy of

AGO 10-542 because the Plaintiff's attorneys had reason to believe that the

Plaintiff was about to be arrested by Lloyd because Lloyd believed the Plaintiff

had made telephone survey polls in Rep. Mia Garrick's district. JA75 ¶ 10, 11. The

survey call at issue contains that following message:

> Please hold for a one-question survey.
>
> As you may have heard, Speaker of the House Nancy Pelosi is coming to South Carolina. Do you think incumbent Democrat [Mia Garrick; various candidate's names] should invite her fellow Democrat Nancy Pelosi to come campaign for her?
>
> Press 1 if you think incumbent Democrat [Mia Garrick; various candidate's names] should invite her fellow Democrat Nancy Pelosi to come and campaign with her.
>
> Press 2 if you think incumbent Democrat [Mia Garrick; various candidate's names] should not invite her fellow Democrat Nancy Pelosi to come and campaign with her.

JA219-220, ¶ 3. The survey call does not advocate the election of a particular

candidate, per the recommendation of the Attorney General's Office, in the opinion

letter written to address Cahaly's inquires to the Attorney General about political

survey polls. AGO 10-542.

On November 1, 2010, Defendant LaRosa completed, under oath, six (6)

separate arrest warrants for the Plaintiff alleging that the Plaintiff's actions were

"in violation of section 16-17-466 of the SC Code of Laws." JA76 ¶ 13. There is

10

no S.C. Code § 16-17-466 in the South Carolina Code. Defendant LaRosa cited a non-existent code section to deceive or confuse the magistrate court as to the actual elements of a crime involving an ADAD.

On November 1, 2010, Defendant LaRosa presented to a Magistrate Judge the six (6) arrest warrants, and based upon Defendant LaRosa's legally false representations to the Magistrate, the Magistrate Judge issued six (6) arrest warrants for the Plaintiffs arrest (I-909042, I-909043, I-909044, I-909045, I-909046, I-909047). JA76 ¶ 15; 86. The six (6) arrest warrants also reference "Code/Ordinance Sec. 16-17-0446(A)(B) in the blanks contained on the arrest warrant form. JA76 ¶ 16. The affidavit of Defendant LaRosa, contained in arrest warrant I-909042, states that:

> That on or about September 23, 2010, the defendant Robert Cahaly, did in Richland County, SC, pay for and disseminate an ADAD or "robo call" survey of a political nature and in doing so, knowing and intentionally failed to promptly disclose in a clear and conspicuous manner to the receiver of the call the identity of the originating party, endorsement of a candidate and or the nature of the call. The call was listed in Richland County prefix number [omitted].  The calls were disseminated in House District 79 which includes Kershaw and Richland Counties. This act being in violation of section 16-17-466 [sic] of the SC Code of Laws.

JA132. House district 79 is the house district for Rep. Mia Garrick. The other five (5) arrest warrants are substantially similar in language to warrant I-909042, except

11

that the political district and county or counties are changed in each arrest warrant to allege additional calls in those additional political districts. JA77 ¶ 18.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call <u>the identity of the originating party</u>," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(1) (the referenced section in § 16-17-446) uses the following language: "<u>the identity of the seller</u>." Defendant LaRosa intentionally modified the language of the Code Section. The arrest warrants do not allege that the Plaintiff was the seller of any goods or services. JA77 ¶ 20.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the … <u>endorsement of a candidate</u>," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(2) (the referenced section in § 16-17-446) uses the following language: "<u>that the purpose of the call is to sell goods or services</u>." Defendant LaRosa intentionally modified the language of the Code Section to deceive the magistrate court.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the … <u>the nature of the call</u>," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(3) (the referenced section in § 16-17-446) uses the following language:

12

"the nature of the goods or services." Defendant LaRosa intentionally modified the language of the Code Section. The arrest warrants do not allege that the Plaintiff was the seller of any goods or services.

Finally, S.C. Code § 16-17-446(A) specifically requires the call to contain a prize promotion in order for the *machine* being used to make the automated calls to qualify as an "Adad" machine ("Adad" means an automatically dialed announcing device which delivers a recorded message without assistance by a live operator for the purpose of making an unsolicited consumer telephone call as defined in Section 16-17-445(A)(3). [Prize Promotion]). A prize promotion is an essential element of the crime. Defendant LaRosa failed to disclose in the arrest warrants that a prize promotion was an essential element of the crime. There is no allegation that the phone calls in this case contained a prize promotion.

Prior to the completion and issuance of the arrest warrants on November 1, 2010, upon information and belief, Defendant LaRosa had communications with Defendant Lloyd about the statutory requirements of S.C. Code § 16-17-446 and AGO 10-542. JA78 ¶ 23. Defendant LaRosa knew that the alleged conduct of the Plaintiff did not violate any of the laws of the State of South Carolina. Defendant LaRosa intentionally modified the language in the Code Sections when drafting the arrest warrants to make it appear to the Magistrate Judge that S.C. Code § 16-17-446 contained certain requirements for ADAD calls when in fact the Code Section

13

did not have those requirements. JA78 ¶ 24. The arrest warrants were made under oath by Defendant LaRosa. JA78 ¶ 25. Upon information and belief, Defendant Lloyd knew that Defendant LaRosa was making the arrest warrants under oath and that the arrest warrants would be submitted to a Court. JA78 ¶ 26. Defendant LaRosa intentionally deceived the Magistrate Court as to the requirements of a criminal charge under S.C. Code § 16-17-446. JA78 ¶ 27.

On November 2, 2010, Defendant Lloyd, through Defendant SLED, issued a press release (hereinafter "Press Release") which stated, in part: "These calls were political in nature and were allegedly made to potential South Carolina voters without properly disclosing the identity of the originating party to the call recipients, which is in violation of SC Code 16-17-446." JA78 ¶ 28; 87 (Press Release). Defendant Lloyd intentionally modified the language in the Code Sections when drafting the press release to make it appear to the public that S.C. Code § 16-17-446 contained certain requirements for ADAD calls when in fact the Code Section did not have those requirements. S.C. Code § 16-17-446 does not require an individual to "properly disclos[e] the identity of the originating party to the call recipients," as alleged in Defendant Lloyd's Press Release. Instead, S.C. Code § 16-17-445(B)(1) (the referenced section in § 16-17-446) uses the following language: "the identity of the seller." Defendant Lloyd, on November 2, 2010, was the final decision maker for Defendant SLED. JA79 ¶ 30. The Press Release

14

contains the policy of Defendant SLED regarding the enforcement of S.C. Code §
16-17-446 and who can be arrested under that Code Section. JA79 ¶ 31.

On November 3, 2010, the Plaintiff was arrested and booked on the charges
contained in the six (6) arrest warrants. JA79 ¶ 32. At the time of Defendant
LaRosa's completion of the arrest warrants, and at the time of the arrest of the
Plaintiff, Defendant LaRosa was in the course and scope of his employment with
Defendant SLED. JA79 ¶ 33. Defendant Lloyd was in the course and scope of his
employment with Defendant SLED at all times referenced herein. JA79 ¶ 34.

The Defendants' arrest of the Plaintiff violated his constitutional rights and
has a chilling effect on his future political speech and ability to make telephone
survey polls. JA79 ¶ 35. The Defendants' prosecution of the criminal charges
against the Plaintiff violated his constitutional rights and has a chilling effect on his
future political speech and ability to make telephone survey polls. JA80 ¶ 36. The
Plaintiff has been harmed due to the Defendants' unconstitutional actions,
specifically, he was arrested for exercising his constitutional rights. JA80 ¶ 37. The
Plaintiff continues to be harmed due to the Code Sections, AGO 10-542, and the
Press Release, and the threat of his future arrest if he exercises his constitutional
rights. JA80 ¶ 38. On or after August 3, 2011, the Attorney General's Office
removed SLED as the prosecuting agency and transferred the case to the First
Judicial Circuit Solicitor's Office. On or about May 1, 2012, all of the criminal

15

charges against the Plaintiff were dismissed by the First Judicial Circuit Solicitor's Office and the Magistrate Court. JA80 ¶ 39; 143.

## SUMMARY OF ARGUMENT

The State of South Carolina allows, as a general rule (with exceptions), people to use an ADAD machine to make automated telephone calls for any reason (message). However, an ADAD machine is not allowed to be used if the telephone message contains a prize promotion along with a message that is of "a political nature" or "related to a political campaign," or an "unsolicited consumer telephone call." But, an ADAD machine can be used to make those types of prohibited messages if the person receiving the call agrees to receive those types of calls, or the call is about an existing contract or debt, or the call is to a person with a previous relationship with the originator of the call. In addition, according to AGO 10-542, ADAD telephone survey calls of a political nature are not illegal if the call does "not advocate a particular candidate."

In all of the cases decided by the federal courts and the state supreme courts, the Courts have declared ADAD code sections unconstitutional if the code section does not make <u>all</u> ADAD calls illegal (unless the ADAD machine used by the government to issue the messages; such as reverse 911 calls or school closing messages). *Moser v. Frohnmayer*, 315 Or. 372, 845 P.2d 1284 (1993); *Lysaght v. State*, 837 F.Supp. 646 (D.N.J.1993); *Van Bergen v. State of Minnesota*, 59 F.3d

16

1541 (8th Cir.1995). There are no federal or state court cases that support the Defendants position that the government can prohibit certain types of political ADAD messages by private citizens, but allow other types of ADAD messages by private citizens. The Defendants, in this case, are asking the Fourth Circuit to do what no court in the United States has been willing to do in an ADAD decision.

This Court should affirm the District Court's decision to grant summary judgment to the Plaintiff on his challenges to the constitutionality of the ADAD laws. First, the District Court correctly concluded that the Code Sections were a content based restriction on speech and they violated the Plaintiff's constitutional right to the freedom of speech. Second, the District Court properly concluded that the Code Sections impermissibly compel political speech. However, the District Court failed to conclude that the Code Sections were unconstitutionally vague because the District Court found that the Plaintiff lacked standing to challenge the vagueness of the Code Sections since the Code Sections clearly applied to his conduct. This was an error because the Plaintiff clearly has standing to challenge the Code Sections. Next, for the damages claim under 42 U.S.C. § 1983, the District Court erroneously dismissed the damages claim. The District Court failed to consider that there are genuine issue of material fact as to whether the Defendants acted out of retaliation towards the Plaintiff because of his political speech. Defendant Lloyd's arrest and prosecution of the Plaintiff was motivated by

17

animus towards the Plaintiff because the Plaintiff was viewed, by Lloyd, as challenging the reelection efforts of Democratic Rep. Mia Garrick. Finally, for the state law claims for false imprisonment and malicious prosecution, the District Court erroneously dismissed those causes of action. The District Court failed to consider that there are genuine issues of material fact as to whether the Defendants had probable cause to arrest the Plaintiff. The arrest warrants are legally invalid on their face. The Plaintiff was not charged in the arrest warrants with the elements of a crime found in the S.C. penal code and the Defendants intentionally fabricated and "made up" the elements of a new criminal cause of action in the arrest warrants presented to the magistrate.

## ARGUMENT

## I. STANDARD OF REVIEW

### A. Standard of Review for Reviewing the District Court's Grant of Summary Judgment.

This Court reviews a District Court's summary judgment order *de novo* if the decision assesses the constitutionality of a law or ordinance. *Brown v. Town of Cary*, 706 F.3d 294, 300 (4th Cir. 2013) (*citing Webster v. U.S. Dep't of Agric.*, 685 F.3d 411, 421 (4th Cir. 2012). This Court reviews the facts of the case in the light most favorable to the non-moving party. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007).

## II. DISCUSSION OF ISSUES

### The Constitutionality of South Carolina's ADAD Code Sections.

The first issue before the Court is the constitutionality of the ADAD Code Sections. The Defendants argue that the Code Sections are constitutional. However, the Code Sections are not constitutional because they are a content based restriction on speech, the Code Sections impermissibly compel political speech, and the Code Sections are unconstitutionally vague.

### ISSUE ONE: South Carolina's ADAD Code Sections are unconstitutional because they are a content based restriction on speech.

The ADAD Code Sections are unconstitutional, on their face and as applied, because they are a content based restriction on speech. *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 338 n.3, 347, 115 S.Ct. 1511, 131 (1995) (applying strict scrutiny to Ohio statute that prohibited the distribution of anonymous political materials designed to promote or defeat a political candidate or issue); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 812-13, 120 S.Ct. 1878 (2000) (applying strict scrutiny to a provision of the Telecommunications Act that required cable operators to restrict sexually explicit channels because the provision singled out "particular programming content" as well as "particular programmers"); *Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846 (1992) (applying strict scrutiny to a Tennessee statute that prohibited solicitation of votes and display of campaign materials within 100 feet of polling

19

place entrances because, under the statute, "[w]hether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign.").

First, it is important to remember the primary purpose of the First Amendment. A state is not permitted to criminalize the peaceful expression of unpopular views. In *Terminiello v. Chicago*, 337 U.S. 1, 69 S.Ct. 894 (1949), the Supreme Court noted that:

> [a] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech … is … protected against censorship or punishment…. There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.

337 U.S. at 4-5.

The First Amendment provides that "Congress shall make no law … abridging the freedom of speech." U.S. CONST. amend. 1. "[I]t is fundamental that the First Amendment prohibits governmental infringement on the right of free speech." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837, 102 S.Ct. 2764 (1982). As the Fourth Circuit has recognized, "[a] bedrock First Amendment principle is that

citizens have a right to voice dissent from government policies." *Tobey v. Jones*, 706 F.3d 379, 391 (4th Cir. 2013). Moreover, speech regarding "matters of public concern … is at the heart of the First Amendment's protection." *Occupy Columbia v. Haley*, 738 F.3d 107 (4th Cir. 2013) *quoting Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59, 105 S.Ct. 2939 (1985) (internal quotation marks omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Occupy Columbia quoting Snyder v. Phelps*, ___ U.S. ___, 131 S.Ct. 1207, 1216 (2011) (internal quotation marks omitted)(emphasis added).

In the *Citizens United v. FEC* decision, the Supreme Court recognized that the First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." 558 U.S. 310, 130 S.Ct. 876 (2010) (emphasis added) (*quoting Eu v. S.F. Cnty. Democratic Cent. Comm*., 489 U.S. 214, 223, 109 S.Ct. 1013 (1989). The fundamental right to engage in political speech concerning a campaign for political office or concerning candidates has been recognized by the Supreme Court in a host of cases. In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612 (1979), the Supreme Court considered the constitutionality of limits on campaign contributions and said:

> The Act's contribution and expenditure limitations operate in an area of the most fundamental First

> Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution. The First Amendment affords the broadest protection to such political expression in order "to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484, [77 S.Ct. 1304] (1957).

424 U.S. at 14. The *Buckley* decision emphasized that "First Amendment protections are not confined to "the exposition of ideas." *Id. quoting Winters v. New York*, 333 U.S. 507, 510, 68 S.Ct. 665 (1948),

> there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs, … of course includ[ing] discussions of candidates.

*Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434 (1966). "This no more than reflects our 'profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Buckley* at 14 *quoting New York Times Co. v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710 (1964).

> In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, for the identities of those who are elected will inevitably shape the course that we follow as a nation. As the Court observed in *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 [91 S.Ct. 642] (1971), "it can hardly be doubted that the constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."

*Buckley* at 15.

## 1. Facially Unconstitutional

### A.

The Code Sections in this case are facially unconstitutional because they are a content-based restriction on speech. *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157 (1988). *See, e.g., McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 338 n.3, 347, 115 S.Ct. 1511 (1995) (applying strict scrutiny to Ohio statute that prohibited the distribution of anonymous political materials designed to promote or defeat a political candidate or issue); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 812-13, 120 S.Ct. 1878 (2000) (applying strict scrutiny to a provision of the Telecommunications Act that required cable operators to restrict sexually explicit channels because the provision singled out "particular programming content" as well as "particular programmers"); *Burson v. Freeman*, 504 U.S. 191, 197, 112 S.Ct. 1846 (1992) (applying strict scrutiny to a Tennessee statute that prohibited solicitation of votes and display of campaign materials within 100 feet of polling place entrances because, under the statute, "[w]hether individuals may exercise their free speech rights near polling places depends entirely on whether their speech is related to a political campaign.").

The United States Supreme Court just reaffirmed that an "Act [is] content based if it required 'enforcement authorities' to 'examine the content of the

message that is conveyed to determine whether' a violation has occurred."

*McCullen v. Coakley*, ___ U.S. ___, 134 S.Ct. 2518, 2531 (2014)(finding Massachusetts' abortion clinic buffer zone unconstitutional) (*citing FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 377, 104 S.Ct. 3106 (1984).   In this case, the Code Sections make a distinction between speech "of a political nature" or speech "relating to a political campaign" and speech concerning a "consumer telephone call" soliciting a sale of goods or services, or speech regarding a debt, or a contract. It is clear that the Code Sections are a content-based restriction on speech because the government must look at the content of the speaker's message to determine if a crime has been committed by the speaker. The speech that is of a political nature is criminalized, but the speech concerning a debt or contract is expressly exempted from criminal prosecution. In addition, an ADAD can lawfully be used for speech unrelated to consumer telephone calls or political calls, such as speech regarding an invitation to a birthday party or to send out a weather forecast.

Also, the Attorney General's Opinion, AGO 10-542, discusses "automated survey telephone calls for political purposes," and concludes "polling calls, even if they are of a political nature, do not advocate a particular political candidate but simply obtain a "snapshot" opinion of a voter, they may be made." Again, the Attorney General's Opinion requires the arresting officer to determine if the telephone call is of a "political nature" or if it "advocates for a particular political

24

candidate." Also, the Opinion requires the arresting officer to determine if the ADAD call is a survey poll versus a non-survey poll since the Opinion exempts political survey polls from the ADAD restrictions if they don't advocate for a particular political candidate. The Opinion, and the Code Sections, don't define the characteristics of a survey poll.

There is a three step analysis to determine if a content-based restriction can survive a constitutional challenge. First, the Court must determine if the category of speech is protected or unprotected by the First Amendment. The categories of speech that are not protected are: obscenity, defamation, fraud, incitement, and speech integral to criminal conduct. *United States v. Stevens*, 559 U.S. 460, 468-69, 130 S.Ct. 1577, 1584 (2010). The United States Supreme Court has not recognized a new category of unprotected speech in over 25 years. *United States v. Stevens*, 533 F.3d 218, 224 (3rd Cir. 2008). In this case, the category of speech is political. Political speech is protected under the First Amendment. *Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876 (2010). Since the category of speech (political) is protected, the government statute must survive strict scrutiny.

The strict scrutiny test is the second and third step in the constitutional analysis. Under strict scrutiny, the government must show that 1) the restriction serves a compelling government interest, and 2) that the restriction is the least

restrictive means to achieve that interest. *Sable Commc'ns of Calif., Inc. v. F.C.C.*, 492 U.S. 115, 126, 109 S.Ct. 2829 (1989). A content-based restriction on speech is presumed invalid, and the government bears the burden of showing its constitutionality. *Ashcroft v. ACLU*, 542 U.S. 656, 660, 124 S.Ct. 2783 (2004). One scholar notes that "a majority of the Supreme Court has never sustained a regulation that was strictly scrutinized for content discrimination reasons." Barry P. McDonald, *Speech and Distrust: Rethinking the Content Approach to Protecting the Freedom of Expression*, 81 NOTRE DAME L.REV. 1347, 1365 n. 63 (2006). In the case at bar, there is no reason for this Court to deviate from the unbroken tradition of the United States Supreme Court of striking down every content-based restriction on speech that must pass strict scrutiny.

In this case, the Code Sections fail the strict scrutiny analysis. The government cannot meet its burden of showing that it has a compelling government interest in prohibiting political speech through an ADAD. If the Court accepts the proffered government interest (tranquility in the home) as a compelling government interest, then the government cannot meet its burden of proving that the Code Sections are the least restrictive means to achieve that interest. The government specifically allows people to use an ADAD if the person uses the devise to communicate a message about debts, contracts, or a business relationship; and for this reason, the government will never be able to show the prohibition is

26

the least restrictive means to achieve any compelling government interest. The government allows people to make calls using an ADAD if the message is not an unsolicited consumer telephone call or a call of a political nature (i.e. a birthday party or a weather forecast); and for this reason, the government will never be able to show the prohibition is the least restrictive means to achieve any compelling government interest. The Code Sections allow for the use of an ADAD machine for any reason, including political campaigns, as long as there is no prize promotion in the message, so the government will never be able to show that the Code Sections are the least restrictive means to achieve tranquility in the home. The Code Sections fail strict scrutiny. Therefore, the Code Sections are unconstitutional on their face.

B.

The courts in two (2) states have struck down codes regulating ADAD calls: Oregon and New Jersey. *Moser v. Frohnmayer*, 315 Or. 372, 845 P.2d 1284 (1993); *Lysaght v. State*, 837 F.Supp. 646 (D.N.J.1993). The courts struck down the ADAD regulations because they were impermissible content-based restrictions. Because the S.C. Code Sections are content-based, the Court should follow the decisions from Oregon and New Jersey and strike down the S.C. Code Sections as unconstitutional. The Defendants rely heavily in their Opening Brief on the case of *Van Bergen v. State of Minnesota*, 59 F.3d 1541 (8th Cir.1995), in which the

27

Eighth Circuit upheld the constitutionality of Minnesota's ADAD statutes. However, in Minnesota, the statutes were enforced against all ADAD calls regardless of the content. *Id.* The S.C. Code Sections in this case are fundamentally different from the Minnesota statutes because the S.C. Code Sections criminalize only consumer telephone calls selling a good or service, calls of a political nature, and calls relating to a political campaign that contain a prize promotion. There is a wide variety of content that is not criminalized by the Code Sections. As such, the *Van Bergen* case is inapplicable to the facts of this case. The Defendants do not cite to any case in which a Court upheld an ADAD regulation that prohibited political speech.

## C.
### Underinclusive

This District Court correctly held that the Code Sections were unconstitutional, and failed strict scrutiny, because they were underinclusive. JA262. The District Court was correct that the Code Sections are fatally underinclusive. The District Court cited *Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 345 (4th Cir. 2005) for the holding that: "A law is underinclusive … and thus not narrowly tailored, when it discriminates against some speakers but not others without a legitimate 'neutral justification' for doing so." In this case, the statutes discriminates against political speech. As mentioned before, a person can use an ADAD machine to send out a message about their favorite football team's

28

latest victory, but a person cannot use an ADAD machine to send out a political message. Both calls interrupt the privacy of the home, but the government cannot articulate a "neutral justification" for allowing the sports call but forbidding the political call. The Code Sections are fatally underinclusive because they are not narrowly tailored.

D.

The Defendants argue that the Code Sections are not content-based. In support of this contention, the Defendants rely heavily on the case of *Brown v. Town of Cary*, 706 F.3d 294 (4th Cir.2013). However, the *Brown* case is a case involving a <u>sign ordinance</u> and it follows a line of cases addressing the constitutionality of sign ordinances. The case *sub judice* is not a sign ordinance case, but instead involves oral speech. "Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Brown* at 306 *quoting City of Ladue v. Gilleo*, 512 U.S. 43, 48, 114 S.Ct. 2038 (1994). This case is very different from a sign ordinance case and the Court should not follow the line of reasoning or sign ordinance cases cited in *Brown*. In the *Brown* case, the Fourth Circuit cites one case involving <u>political</u> signs, and in that case, the Fourth Circuit held the sign ordinance unconstitutional. *Arlington County Repub. Comm. v. Arlington County Va.*, 983 F.2d 587 (4th Cir.1993). The *Arlington County Repub. Comm.* case

29

demonstrates that the Fourth Circuit does not allow the government to regulate political speech in the context of sign ordinances – or in the context of ADAD machines. Instead of following the *Brown* line of cases, the Fourth Circuit should follow the law as enunciated in *United States v. Stevens*, 559 U.S. 460, 468-69, 130 S.Ct. 1577, 1584 (2010), discussed *supra*, and the recent decision in *McCullen v. Coakley*, ___ U.S. ___, 134 S.Ct. 2518, 2531 (2014)(discussing content based versus content neutral criteria and finding Massachusetts' abortion clinic buffer zone unconstitutional).

If this Court does follow the line of reasoning in the *Brown* sign ordinance case, the Code Sections are still a content-based restriction on speech that are unconstitutional; or in the alternative, if the Court finds that the Code Sections are not content-based, the Code Sections are unconstitutional under the intermediate scrutiny required for content-neutral restrictions. In *Brown*, in determining if a sign ordinance was content neutral, the Court said that it would look at "why … the Town distinguished content in its regulation." *Brown* at 301. The Court said that:

> A regulation is not a content-based regulation of speech if:
> (1) the regulation is not a regulation of speech, but rather a regulation of the places where some speech may occur;
> (2) the regulation was not adopted because of disagreement with the message the speech coveys; or
> (3) the government's interests in the regulation are unrelated to the content of the affected speech.

30

*Id*. at 302. In this case, the Code Sections are clearly a content-based restriction on speech. The Code Sections fail the first prong because the Code Sections regulate speech (consumer calls selling goods and services and political speech) and have nothing to do with "where some speech may occur." The Code Sections fail the second prong because the regulation was clearly adopted because the government disagrees with the message of consumer calls selling goods and services and political speech. The Defendants have provided no affidavits of the sponsors of the Code Sections, or any reference to the debate in the General Assembly, as to the motives of the government sponsors of the law. There appears to have been no debate on the bill prohibiting political speech. The Code Sections fail the third prong because the government's interest in the regulation is obviously related to the ban on political speech or speech related to a political campaign. The government can use the Code Sections to suppress speech critical of the government and its political members (General Assembly members). An ADAD call critical of the government's handling of tax funds is illegal since it is speech of a political nature. An ADAD call critical of an incumbent State House Member (Rep. Mia Garrick) is illegal because it is speech related to a political campaign. An ADAD call critical of the Governor is illegal because it is of a political nature. The Code Sections fail all three prongs of the *Brown* sign ordinance test, so the Code Sections are a content-based restriction.

31

Before the Plaintiff moves into the next section of this Opening Brief, it is important to point out that the Defendants have provided this Court with absolutely no factual evidence as to "why" the Code Sections were enacted into law and no evidence that the Code Sections were enacted for content-neutral reasons. The Fourth Circuit <u>puts the burden on the government</u> to establish the content neutrality of the regulation.

> The government cannot disguise a content-based restriction beneath content neutral justification, but rather must demonstrate a reasonable fit between its legitimate interests in [traffic] safety and esthetics …. Nor will the mere assertion of a content-neutral purpose be enough to save a law, which on its face, discriminates based on content …. When a government supplies a content-neutral justification for the regulation, that justification <u>is not given controlling weight without further inquiry</u>.

*Brown* at 303-304 (internal citations and quotations omitted). In this case, there are no affidavits filed by the Defendants by the government officers responsible for the enactment of the Code Sections, and there is no legislative history as to why political speech has been prohibited by the government. Why is an ADAD machine allowed to make calls about a birthday party, but not about the sale of a birthday cake? Why is an ADAD machine allowed to make calls about weather forecasts, but not about political issues? Why is an ADAD machine allowed to make calls related to a Nike clothing campaign (to people with an existing business relationship with the company), but not calls related to a campaign for the State

House (to donors of the candidate)? The Defendants have not provided any factual evidence to this Court about the purposes of the law, as required by the Fourth Circuit.

If the Court determines that the Code Sections are not content-based, and decides to analyze the Code Section under the intermediate level of scrutiny, the Code Sections are still unconstitutional. The *Brown* Court said the "sign ordinance is constitutional if it furthers a substantial governmental interest, is narrowly tailored to further that interest, and leaves open ample alternative channels of communication." *Brown* at 305. In this case, there is no substantial governmental interest furthered by the Code Sections that is narrowly tailored to further that interest. Again, the Defendants did not file any affidavits of the Code Section sponsors to demonstrate the governmental interest and there is no legislative history (as *Brown* requires). Instead, the Defendants argue that privacy or tranquility in the home are governmental interests advanced by the Code Sections. However, assuming that those are the governmental interests (a significant assumptions since there is no legislative history), the Code Sections are not narrowly tailored to serve that interest. The regulation cannot "burden substantially more speech than is necessary to further the government's legitimate interests." *Brown* at 305. As mentioned above, the State of South Carolina allows, as a general rule (with exceptions), people to use an ADAD machine to make

33

automated telephone calls for any reason (message) and as many times a day as the machine can dial the same number. Again, why is an ADAD machine allowed to make calls about a birthday party, but not about the sale of a birthday cake? If privacy was a governmental interest, why allow an invasion of privacy over a birthday party invitation, but not an invasion of privacy for the sale of a birthday cake? Why is an ADAD machine allowed to interrupt the tranquility of a person to make calls about weather forecasts, but not about political issues? If tranquility is an interest, won't people be bothered equally about an ADAD machine giving them a weather forecast as they would about a message regarding a political issue? Why is an ADAD machine allowed to make calls related to a Nike clothing campaign (to people with an existing business relationship with the company), but not calls related to a campaign for the State House (to donors of the candidate)? The donors to the candidate probably want to hear the message of the candidate. The Code Sections burden more speech than is necessary, so they are not narrowly tailored. In addition, the Code Sections do not create privacy or tranquility in the home. The government cannot demonstrate that the Code Sections are narrowly tailored to serve any governmental interest.

## 2. Unconstitutional as Applied to the Plaintiff in this Case

The Code Sections are unconstitutional as applied to the Plaintiff in this case because the Defendants made the Code Sections a content-based restriction on

34

speech. In this case, the arrest warrants, and the SLED press release, state that the Plaintiff's alleged conduct violated the Code Sections because of the political nature of the alleged calls. The arrest warrants specifically state that the warrants were being issued because the Plaintiff allegedly "did in Richland County, SC, pay for and disseminate an ADAD or 'robo call' survey of a <u>political</u> nature." JA133. Defendant Lloyd, through Defendant SLED, issued a press release which stated, in part: "These calls were <u>political</u> in nature and were allegedly made to potential South Carolina <u>voters</u>." JA87. The Defendants used the Code Sections to issue arrest warrants for the Plaintiff and the Defendants actually arrested and detained the Plaintiff because of his political speech.

Since the Defendants actually used the content of the Plaintiff's message to arrest him, the Code Sections are unconstitutional as applied to the Plaintiff. Again, the Defendants must now show that the Code Sections, as they are interpreted by the Defendants, satisfy strict scrutiny. The Defendants must show that 1) their interpretation and application of the Code Sections serve a compelling government interest, and 2) that their interpretation and application of the Code Sections is the least restrictive means to achieve that interest. For the reasons discussed in the previous section, the Defendants cannot meet this burden. Therefore, the Code Sections are unconstitutional as applied to the Plaintiff in this case by the Defendants.

35

**ISSUE TWO: The Code Sections are unconstitutional because they impermissibly compel political speech.**

This case is also a compelled speech case, as applied. The Code Sections are unconstitutional as applied to the Plaintiff because the Defendants compel the Plaintiff to make certain political statements in order to avoid criminal prosecution. The District Court found the Code Sections unconstitutional for this reason. The Defendants, in the arrest warrants and the SLED press release, state that the Plaintiff was supposed to affirmatively make certain statements during the telephone survey polls. In the arrest warrants, Defendant LaRosa states that:

> That on or about September 23, 2010, the defendant Robert Cahaly, … knowing and intentionally **failed to promptly disclose** in a clear and conspicuous manner to the receiver of the call **the identity of the originating party, endorsement of a candidate and or the nature of the call.**

JA133. S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the identity of the originating party," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(1) (the referenced section in § 16-17-446) uses the following language: "the identity of the seller." Defendant LaRosa intentionally modified the language of the Code Section in the arrest warrant. The arrest warrants do not allege that the Plaintiff was the seller of any goods or services.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the … endorsement of a candidate," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(2) (the referenced section in § 16-17-446) uses the following language: "that the purpose of the call is to sell goods or services." Defendant LaRosa intentionally modified the language of the Code Section in the arrest warrant.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call … the nature of the call," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(3) (the referenced section in § 16-17-446) uses the following language: "the nature of the goods or services." Defendant LaRosa intentionally modified the language of the Code Section in the arrest warrant. The arrest warrants do not allege that the Plaintiff was the seller of any goods or services.

On November 2, 2010, Defendant Lloyd, through Defendant SLED, issued a press release which stated, in part: "These calls were political in nature and were allegedly made to potential South Carolina voters without properly disclosing the identity of the originating party to the call recipients, which is in violation of SC Code 16-17-446." JA87. Defendant Lloyd intentionally modified the language in the Code Sections when drafting the press release to make it appear to the public that S.C. Code § 16-17-446 contained certain requirements for ADAD calls when

37

in fact the Code Section did not have those requirements. S.C. Code § 16-17-446 does not require an individual to "properly disclosing the identity of the originating party to the call recipients," as alleged in Defendant Lloyd's Press Release. Instead, S.C. Code § 16-17-445(B)(1) (the referenced section in § 16-17-446) uses the following language: "the identity of the seller." There is no allegation that the Plaintiff was selling any goods or services.

The Defendants, as they applied the Code Sections in the arrest warrants and SLED press release, compel the Plaintiff to state in his speech: 1) the identity of the originating party, 2) the endorsement of a candidate, and 3) the nature of the call. If the Plaintiff fails to include these political statements in his speech (survey poll), according to the Defendant, the Plaintiff will be arrested for violating an ADAD crime. The Defendants' speech requirements are clearly political in nature. The Defendants want the Plaintiff to state that a candidate has endorsed the statement, and to reveal the nature of the call (i.e. what is the purpose of the call – i.e. what is the campaign strategy).

The Code Sections are unconstitutional as applied because they impermissibly require compelled speech by the Plaintiff of a political nature. The constitutional right to free speech "included both the right to speak freely and the right to refrain from speaking." *Wooley v. Maynard*, 430 U.S. 705, 714, 97 S.Ct. 1428 (1977). State statutes that require compelled speech are unconstitutional.

38

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston, Inc.*, 515 U.S. 557, 115 S.Ct. 2338 (1995). In this case, the Defendants are attempting to compel the Plaintiff to make certain political statements regarding the "endorsement of a candidate" and the political "nature of the call." The First Amendment prevents the government from dictating the content of speech "absent compelling necessity, and then, only by means precisely tailored." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 800, 109 S.Ct. 2667 (1988). In the case *sub judice*, the government cannot articulate a compelling necessity to force the Plaintiff to make certain political statements, and if the government can articulate such a necessity, the restriction is not precisely tailored. Therefore, the Code Sections are unconstitutional as applied in this case because they compel speech of a political nature.

**ISSUE THREE: The Code Sections violate the Plaintiff's constitutional rights because the Code Sections are unconstitutionally vague.**

The Code Sections are unconstitutionally vague, both on their face and as applied in this case. The South Carolina Supreme Court has held that:

> The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise Judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must

necessarily guess at its meaning and differ as to its applicability, it is unconstitutional.

*City of Beaufort v. Baker*, 315 S.C. 146, 152, 432 S.E.2d 470, 473-74 (1993).

The Court has little tolerance for vagueness in criminal statutes because the consequences of imprecision are severe. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186 (1982). To survive a vagueness challenge, a statute must satisfy two criteria. First, the statute must provide sufficient notice of the conduct prohibited. *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855 (1983). Second, the statute must not be written in such a manner as to permit or encourage arbitrary and discriminatory enforcement. *Kolender*, 461 U.S. at 357, 103 S.Ct. 1855. If the statute fails either prong, then the statute is impermissibly vague. *See Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480 (2000).

The rationale for the first requirement of sufficient notice is "that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808. A criminal statute must be sufficiently definite in its terms "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Harriss*, 347 U.S. at 617, 74 S.Ct. 808.

The second prong requires that the statute provide officials with clear standards for enforcement, but it is related to the first prong. If a reasonable person

40

cannot understand the conduct that is to be proscribed, then neither can a police officer. *People v. Stuart*, 100 N.Y.2d 412, 765 N.Y.S.2d 1, 797 N.E.2d 28, 34-35 (2003). However, the second requirement is considered a more important aspect of the vagueness doctrine. *Kolender*, 461 U.S. at 358, 103 S.Ct. 1855. "Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.'" *Id*. (*quoting Smith v. Goguen*, 415 U.S. 566, 575, 94 S.Ct. 1242 (1974)). A vague statute would, therefore, allow police to be "guided not by clear language, but by whim." *Stuart*, 765 N.Y.S.2d 1, 797 N.E.2d at 35. Stated differently, if "arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S.Ct. 2294, (1972).

### Plaintiff's Standing to Challenge the Vagueness of the Code Sections

The District Court did not reach the merits of this issue because the District Court held that the Plaintiff did not have standing to challenge the vagueness of the Code Sections because "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." JA265 (citing *Parker v. Levy*, 417 U.S.

41

733, 756 (1974). This was an error. There are significant issues as to whether the Code Sections actually apply to the survey poll language at issue in this case. First, the survey call does not advocate the election of a particular candidate, in accordance with the recommendation of the Attorney General's Office, found in the opinion letter written to address Cahaly's inquires to the Attorney General about political survey polls. AGO 10-542. Yet, the Defendants ignored the Attorney General's Opinion, even after Cahaly's attorneys provided LaRosa with the Opinion prior to the issuance of the arrest warrants. JA75. It is clear that the Code Sections do not apply to the survey poll, but the Plaintiff was still arrested. Also, the Code Sections state: "Adad" means an automatically dialed announcing device which delivers a recorded message without assistance by a live operator for the purpose of making an unsolicited consumer telephone call as defined in Section 16-17-445(A)(3)[Prize Promotion]. S.C. Code 16-17-446. It is undisputed that the survey poll did not contain a prize promotion. Yet, the Defendants still arrested the Plaintiff. The Defendant's Opening Brief argues that there is a typographical error in the Code Sections and the element of a prize promotion should be disregarded by the Court. This is an astonishing argument in a case involving a criminal code section. Cahaly was arrested because of these Code Sections. Defendant Lloyd issued the Press Release two days before the general election to generate publicity for the arrest. Cahaly's mug shot was broadcast over the print and television news

42

in the days leading up to the general election. Cahaly had every reason to rely upon the Code Sections, as written, and believe that a person is not committing an ADAD violation if there is no prize promotion in the telephone message. Next, the Defendants' arrest warrants state that the Plaintiff was arrested because the survey failed to contain "the endorsement of a candidate." There is absolutely no factual evidence to indicate that a candidate had anything to do with the survey poll, as opposed to an independent political action committee, so no candidate endorsement is possible in those cases. Finally, Cahaly was not the seller of any goods or services, yet the arrest warrants and Press Release required Cahaly to reveal "the identity of the originating party" and the "nature of the call" as if he was the seller of a good or service under the Code Sections. There are significant issues as to whether the Code Sections apply to the survey poll in this case; therefore, the Plaintiff has standing for this issue.

In order to have standing in federal court, the complainant must demonstrate: (1) they have suffered an actual or threatened injury; (2) a causal connection between the injury complained of and the challenged action; and, (3) the injury can be redressed by a favorable decision. *Marshall v. Meadows*, 105 F.3d 904, 905-6 (4th Cir. 1997). In this case, the Plaintiff (1) suffered an actual injury because he was arrested and he has a threatened injury because he can be arrested in the future for using an ADAD machine to transmit political speech; (2)

there is a causal connection between the arrest and threats of future arrests and this action for declaratory and injunctive relief; and (3) the injury can be redressed by a favorable decision because the Court can declare the Code Sections unconstitutional and issue an injunction against the Defendants. Therefore, the Plaintiff has standing to challenge the vagueness of the Code Sections, Press Release and the Attorney General's Opinion.

### 1. Facially Unconstitutional

The Code Sections are facially unconstitutional because they are vague and they fail both prongs of the vagueness test. The Code Sections use three terms and phrases that are vague. First, the phrase "calls of a political nature" is vague. The statute does not limit the term political to only partisan races. So, the phrase would be construed by the police authorities to encompass "church politics," "employment politics," and "neighborhood politics" among other political disagreements. For example, if an ADAD is used by a homeowner to encourage the residents of a particular neighborhood association to vote for a proposed change to the restrictive covenants, a reasonable person of ordinary intelligence could not know if that is a crime. If an ADAD is used by a pastor to call the members of a church to come to a business meeting of the church to vote for the annual budget of the church, a reasonable person of ordinary intelligence could not determine if that is a crime. If an employer uses an ADAD to send a message

44

informing the employees of a proposed change in the employee benefits package, or if a business uses an ADAD to send a message to its stockholders requesting a vote in favor of a particular board member, the Code Sections could be construed to make that speech a crime. Since the statute does not provide guidance about these calls of a non-partisan political nature, the Code Sections are unconstitutionally vague.

Second, the phrase "including, but not limited to, calls relating to political campaigns" is vague. There is simply no way a reasonable person (or police officer) of ordinary intelligence could determine what conduct or speech is related to a political campaign, and what conduct or speech would not be considered related to a political campaign. If a pastor uses an ADAD to send out a pro-life message to his congregation, is that a message related to political campaigns? Where is the line drawn? A reasonable person of ordinary intelligence could not know if that message was a crime, so the Code Sections are unconstitutional.

Third, the phrase "in response to a person with whom the telephone solicitor has an existing business relationship or has had a previous business relationship" is vague. Political parties, and political organizations and PACs are often incorporated, and as such, could be considered a business by a reasonable person. The parties and organizations often sell merchandise (shirts) and other goods and campaign services. If a person has voted in the Republican Party primary, does that

45

person have an existing (or previous) business relationship with the Republican Party, and its affiliates and candidates, that would allow, under the statute, the Party or any of its nominees and affiliates to call the voter using an ADAD? If a person has purchased a campaign shirt from a candidate, can that candidate use an ADAD machine to call the purchaser of the shirt? A reasonable person, and a reasonable police officer, could disagree on the answer to this question and the previous examples. As such, the Code Sections fail both prongs of the test for vagueness.

### 2. Unconstitutional As Applied to the Plaintiff in this Case

The Code Sections are unconstitutional as applied to the Plaintiff under the facts of this case. The Defendants required the Plaintiff (in the arrest warrants and SLED press release) to make certain statements during his speech to avoid criminal prosecution, and those required comments are unconstitutionally vague. First, the phrase "the identity of the originating party" is vague. Does this term mean the name of the person who actually spoke the recorded poll message heard by the receiver of the call (the voice talent), or does it mean the company initiating the poll and employing the person who made the recording (the campaign manager), or does it mean the person who hired the company initiating the poll (the candidate)? A reasonable person (or police officer) of ordinary intelligence could not know the answer to these questions, so the term is unconstitutionally vague.

46

Second, the arrest warrants' phrase "the endorsement of a candidate" is vague. This term is so vague, that it is nonsensical. What does it mean that a call (survey poll) must contain the endorsement of a candidate? What exact wording would the originator of the call have to use to satisfy the requirement that the call had been endorsed by a candidate? What if the call is not endorsed by a candidate, but instead, is paid for by an issue advocacy group, or a single concerned citizen who wants to get a message out about a candidate? How would the issue advocacy group send out a message that contains the endorsement of a candidate, when coordination between candidates and issue advocacy groups is often prohibited by the campaign finance laws? In a survey poll, such as the one at issue in this case, the "endorsement of a candidate" requirement will skew the statistical results of the survey because people often tell pollsters what they think the pollster wants to hear. Survey polls need to be independent of any specific candidate (from the perspective of the survey participant) in order to increase the statistical accuracy of the poll.

Third, the arrest warrants' phrase "the nature of the call" is vague. A reasonable person, or a reasonable police officer, could reach very different conclusions about that phrase. There is simply no way for an ADAD user to know if his message satisfies this requirement when drafting the language of the message. Is the nature of the call an analysis of why the message is being sent to

47

the recipient and the campaign's expectation of the call (increase voter turnout, educate the electorate, determine the support level of a policy position), or is it a technical analysis revealing the decibel level of the message and the speed in which the message is being sent through the telephone lines (85 decibels for the voice talent and 56k bits per second for the connection speed)? Reasonable people could disagree, and as such, the phrase is unconstitutionally vague.

It is important to reflect, at this point, on the second prong of the vagueness test. The second prong is the product of the Supreme Court's concern that vague laws often result in discriminatory enforcement by those with police powers. This case is a sad example of vague laws being used to punish political opponents. The Director of SLED, Reginald Lloyd, is a supporter and fundraiser for Representative Mia Garrick, a Democrat. He used his position, and title, to hold a fundraiser for Mia Garrick and he asked people to give her a thousand dollars for her campaign for the House. Lloyd appears with Rep. Garrick in a campaign advertisement. Lloyd knows how to support his friends, but he also knows how to punish his friend's political opponents. He identified the Plaintiff as a Republican who allegedly ran survey calls on behalf of the Republican candidate challenging Mia Garrick. Defendant Lloyd than used a vague law to arrest and prosecute the Plaintiff because the Plaintiff did not agree with the politics of Lloyd's preferred candidate. This case illustrates the danger of vague laws that can be used by

government agents to arrest their political opponents. The Code Sections are unconstitutionally vague because they fail the second prong of the vagueness test.

**ISSUE FOUR: For the 42 U.S.C. § 1983 damages claim, there are genuine issues of material fact as to whether Defendants Lloyd and LaRosa arrested and prosecuted the Plaintiff to retaliate against him because of his political speech.**

The Plaintiff's constitutional rights were violated because the Defendants arrested him, and prosecuted him, in retaliation for the Plaintiff exercising his constitutional right to the freedom of political speech regarding the candidacy of Rep. Mia Garrick. However, the District Court granted the Defendants' motion for summary judgment regarding the Plaintiff's 42 U.S.C. § 1983 damages claims against Defendants Lloyd and LaRosa without analyzing this issue. This was an error because there are genuine issues of material fact that preclude summary judgment on this issue. Federal law allows, under some circumstances, for state actors to be granted immunity from money damages; however, the state actors can lose their immunity if the arrest or prosecution was motivated by retaliation for the Plaintiff's speech. In this case, the Plaintiff alleges he was both arrested and prosecuted due to his political speech, and this allegation and the factual evidence creates a genuine issue of material fact that precludes summary judgment.

A.

Summary Judgment

Summary Judgment is appropriate when there are no genuine issues as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. For this issue, there are genuine issues of material fact; therefore, this case is not ripe for summary judgment. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). When considering a motion for summary judgment, the court reviews the pleadings and the documentary evidence in the light most favorable to the nonmoving party. *Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996).

B.

Retaliatory-Arrest

The Plaintiff alleges that his constitutional rights were violated because the Defendants arrested him in retaliation for the Plaintiff exercising his constitutional right to the freedom of political speech. The Defendants do not have immunity from a § 1983 damages claim under those circumstances. *Reichle v. Howards*, ___ U.S. ___, 132 S.Ct. 2088 (2012); *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013); *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1264 (2006). Official reprisal for protected speech "offends the Constitution [because] it threatens to inhibit exercise of the protected right," *Crawford-El v. Britton*, 523 U.S. 574, 588, n. 10, 118 S.Ct. 1584 (1998), and the law is settled that as a general matter the First Amendment

50

prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out. *Id.*, at 592, 118 S.Ct. 1584; *see also Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech"); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283-284, 97 S.Ct. 568 (1977) (adverse action against government employee cannot be taken if it is in response to the employee's "exercise of constitutionally protected First Amendment freedoms").

In *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013), the Fourth Circuit held that a cognizable First Amendment retaliation claim requires a plaintiff to show: (1) "that [plaintiff's] speech was protected;" (2) "defendant's alleged retaliatory action adversely affected the plaintiff's constitutionally protected speech;" and (3) "a causal relationship exists between [plaintiff's] speech and the defendant's retaliatory action." *Id.* quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685-86 (4th Cir.2000). In this case, the plaintiff alleges that his speech was protected, that the Defendants arrested him for exercising his rights, and the Defendants retaliated against the Plaintiff for his speech, specifically his speech regarding the campaign of Rep. Mia Garrick. There are genuine issues of material fact that preclude summary judgment in favor of the Defendants on the issue of the Plaintiff's § 1983 damages claim.

51

C.

Retaliatory-Prosecution

The Plaintiff also alleges that the Defendants prosecuted him because the Plaintiff exercised his constitutional right to the freedom of speech, and the Defendants are not immune from § 1983 damages claims in those cases. *Reichle v. Howards*, ___ U.S. ___, 132 S.Ct. 2088 (2012); *Tobey v. Jones*, 706 F.3d 379 (4th Cir. 2013); *Hartman v. Moore*, 547 U.S. 250, 126 S.Ct. 1264 (2006). The legal analysis for the allegation for retaliatory-prosecution is virtually identical to the claim for retaliatory-arrest, and the Plaintiff incorporates the section above verbatim into this section. In this case, the plaintiff alleges that his speech was protected, that the Defendants prosecuted him for exercising his rights, and the Defendants retaliated against the Plaintiff for his speech, specifically his speech regarding the campaign of Rep. Mia Garrick. There are genuine issues of material fact that preclude summary judgment in favor of the Defendants on the issue of the Plaintiff's § 1983 damages claim.

**ISSUE FIVE: For the state law causes of action for false imprisonment and malicious prosecution, there are genuine issues of material fact as to whether there was probable cause to arrest the Plaintiff.**

First, the Plaintiff wants to emphasis that the issues raised in this section focus on the <u>legal</u> statements made in the arrest warrants. Defendant LaRosa filed six arrest warrants that contain absolutely false information about the elements of an ADAD crime, and the warrants fail to mention that a prize promotion is an

52

essential element of an ADAD crime. Defendant LaRosa literally made up the elements of a crime that does not exist in the penal code. The District Court granted the Defendants' summary judgment and dismissed the state law causes of action because the District Court held that there was probable cause to arrest the Plaintiff. However, there are genuine issues of material fact that preclude the Court from entering summary judgment in favor of the Defendants on this issue.

The Defendants did not have probable cause to arrest the Plaintiff since the arrest warrants are facially invalid and the arrest and prosecution was retaliation for the Plaintiff exercising his First Amendment right to freedom of political speech. First, the Court should consider the motives of Director Lloyd. Director Lloyd is a financial and political supporter of Rep. Mia Garrick, a Democrat. He is a fundraiser for her, and he was soliciting contributions on her behalf at the same time he was arresting and prosecuting the Plaintiff. During the time period Lloyd was raising money for Rep. Garrick, Lloyd was appearing in court as part of the prosecution team asking the court to find the Plaintiff guilty of a crime. Director Lloyd even appears in a campaign advertisement on behalf of Rep. Garrick. When Director Lloyd was informed by Rep. Garrick that the Plaintiff was conducting a survey poll about her campaign, Director Lloyd used the full force of his office to retaliate against the Plaintiff. Eventually, after one and a half years of malicious prosecution by Lloyd and LaRosa, Plaintiff's counsel was able to get the

prosecuting attorney for SLED removed from the case by the Attorney General's office and Director Lloyd then lost operational control over the prosecution. The Attorney General's office reassigned the criminal case to the First Judicial Circuit Solicitor's Office. The First Judicial Circuit Solicitor's Office was not motived by any political vendetta against the Plaintiff (or under the control of Director Lloyd), and the Solicitor's Office dismissed all charges against the Plaintiff.

Second, the Defendants did not have probable cause to arrest the Plaintiff because the Attorney General's office issued an attorney general's opinion, on behalf of the Plaintiff, stating that the Plaintiff's political survey calls were not covered by the ADAD statutes. (AGO 10-542). Now, how can the Defendants have probable cause to believe that the Plaintiff had any criminal intent in making the calls when the Plaintiff told an Assistant Attorney General about the survey calls prior to the calls being made, and the Plaintiff had Rep. Thad Viers get a formal, written opinion from the Attorney General's Office stating that the survey calls were going to be made and the Attorney General's Office stated that the ADAD calls were legal? The Attorney General is the Chief Prosecutor in the State of South Carolina pursuant to the South Carolina State Constitution. Article V, Section 24 ("The Attorney General shall be the chief prosecuting officer of the State with authority to supervise the prosecution of all criminal cases in courts of record."). The Attorney General's Opinion was given to Defendants Lloyd and

54

LaRosa before the arrest warrants were issued because Plaintiff's counsel had reason to believe the Plaintiff was going to be charged with an ADAD crime. The Defendants knowingly violated the written opinion of the Attorney General in this case, and ignored the Attorney Generals constitutional authority. This is clear evidence of a lack of probable cause, and that the criminal charges were brought to retaliate against the Plaintiff.

Third, the arrest warrants are invalid on their face. In the arrest warrants, Defendant LaRosa states that:

> That on or about September 23, 2010, the defendant Robert Cahaly, … knowing and intentionally **failed to promptly disclose** in a clear and conspicuous manner to the receiver of the call **the identity of the originating party, endorsement of a candidate and or the nature of the call.**

The arrest warrants are *invalid on their face because they contain the elements of a crime that do not appear anywhere in the penal code* for the State of South Carolina. The elements of the crime are entirely fabricated by LaRosa. S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the identity of the originating party," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(1) (the referenced section in § 16-17-446) uses the following language: "the identity of the seller." Defendant LaRosa intentionally modified the language of the Code

Section. The arrest warrants do not allege that the Plaintiff was the seller of any goods or services.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the … endorsement of a candidate," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(2) (the referenced section in § 16-17-446) uses the following language: "that the purpose of the call is to sell goods or services." Defendant LaRosa intentionally modified the language of the Code Section.

S.C. Code § 16-17-446 does not require an individual "to promptly disclose in a clear and conspicuous manner to the receiver of the call the … the nature of the call," as alleged in the arrest warrant affidavit. Instead, S.C. Code § 16-17-445(B)(3) (the referenced section in § 16-17-446) uses the following language: "the nature of the goods or services." Defendant LaRosa intentionally modified the language of the Code Section. Clearly, the arrest warrants are invalid on their face. The Plaintiff did not violate any law, so Defendants LaRosa and Lloyd made up the elements of a crime whole-cloth.

There are genuine issues of material fact that preclude summary judgment in favor of the Defendants on the state law causes of action. The Defendants did not have probable cause to arrest the Plaintiff. The Defendants ignored the written opinion of the Attorney General and the authority granted to the Attorney General

56

in the State Constitution. The arrest was retaliation for the Plaintiff exercising his constitutional right to freedom of political speech. The arrest warrants are not valid on their face. The Circuit Court should reverse the decision of the District Court on this issue and allow the state law causes of action to proceed to a jury.

## CONCLUSION AND REQUEST FOR RELIEF

In conclusion, for all of the reasons explained herein, summary judgment should be granted in favor of Plaintiff Robert Cahaly for his challenges to the constitutionality of the Code Sections. The District Court's decision granting summary judgment in favor of the Plaintiff on this issue should be affirmed. Next, the Circuit Court should reverse the decision of the District Court dismissing the Plaintiff's 42 U.S.C § 1983 damages claims against Defendants Lloyd and LaRosa. Finally, the District Court's decision dismissing the state law claims for false imprisonment and malicious prosecution should be reversed and the case should be returned to the District Court for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Cross-Appellant requests oral argument in this case because of the importance of the issues raised in this appeal.

Respectfully Submitted,

*/s/ Samuel D. Harms, III*
Samuel D. Harms, III
HARMS LAW FIRM, PA
33 Market Point Drive
Greenville, SC 29607
(864) 277-0102

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>14-1651</u>        **Caption:** <u>Robert C. Cahaly v. Paul C. LaRosa, III</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]    this brief contains _____13,877_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]    this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2010</u> [*identify word processing program*] in <u>Tiimes New Roman 14 Point</u> [*identify font size and type style*]; **or**

   [ ]    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>Samuel D. Harms</u>

Attorney for <u>Robert Cahaly</u>

Dated: <u>10/21/2014</u>

# CERTIFICATE OF SERVICE

I certify that on  10/21/2014  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Kenneth Paul Woodington
DAVIDSON & LINDEMANN, P.A.
1611 Devonshire Drive, Second Floor
Columbia, SC 29204
kwoodington@dml-law.com

/s/ Samuel D. Harms
_____
Signature

10/21/2014
_____
Date